

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 2 3 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | ) | |
|---|---|---|
| GAIL KAY, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. 06C 0368 |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | Jury Trial Demanded   JUDGE NORGLE |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

MAGISTRATE JUDGE VALDEZ

## COMPLAINT

Plaintiff Gail Kay ("Plaintiff"), by and through her attorney, Steven J. Plotkin, states the following as her Complaint against defendant Board of Education of the City of Chicago (the "Board"). (All allegations other than those stating what the Plaintiff did, believed or received, and recitations of statutory law, are alleged herein on information and belief.)

### NATURE OF THE CASE

1. This action is brought by Plaintiff to obtain relief for the Board's unlawful and retaliatory conduct against Plaintiff in violation of a previously-entered settlement agreement, federal statutory civil rights and/or common law.

2. In 1994 Plaintiff, an elementary school teacher, filed a complaint in this Court, entitled *Gail Kay and Maureen Dudley v. Raphael Guajardo, individually and as Principal of Walt Disney Magnet School, Argie Johnson, individually and as General Superintendent of Schools, and The Board of Education of the City of Chicago*, Case No. 94 C 4922 (U.S.D.C., N.D.Ill.) (the "§1983 Lawsuit"), seeking injunctive and other relief for defendants' harassment and intimidation against two teacher representatives to the Local School Council (the "LSC").

3. By late February 1996, all parties entered into a settlement agreement to resolve the § 1983 Lawsuit (the "Settlement Agreement").

4. In August 1997 Plaintiff returned to the school she taught at before the § 1983 Lawsuit was filed. Plaintiff worked there as an elementary school teacher until August 2004, when she informed Disney Magnet School's principal that she would not return for the upcoming 2004-05 school year.

5. Between her August 1997 reinstatement and throughout until her June 2004 retirement, Plaintiff was not paid any salary by the Board, did not receive any other employee benefits like other similarly situated teachers and did not receive any credit for her teaching service toward her pension. This suit seeks the monetary recovery of those and other items.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Count II of this Complaint pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367.

7. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b). The Plaintiff and Defendant Board reside in this district and most if not all of the events giving rise to this Complaint occurred in this district.

## THE PARTIES

8. Plaintiff Gail Kay is a citizen of the State of Illinois residing in Chicago, Illinois, and has been such at all times relevant herein.

9. Defendant Board of Education of the City of Chicago (the "Board") is a municipal corporation organized under the laws of the State of Illinois. The Board at all times had its principal office in Chicago.

## FACTS

### Plaintiff's Earlier Employment Background

10. Plaintiff was first employed by the Board as an elementary school teacher in September 1966.

11. In 1974, she was hired as a teacher at the Walt Disney Magnet School ("Disney") at the end of a rigorous selection process which included interviews and testing by Northwestern University faculty. She worked as a teacher at Disney until June 1994.

### LSC Representative

12. The Chicago School Reform Act (the "Reform Act") was enacted in 1988 in an attempt to resolve certain problems affecting the Chicago Public Schools' educational programs and system. The Act made significant changes in school governance and administration by decentralizing the school system and by imposing primary responsibility for local school governance on parents, community residents, teachers and school principals.

13. The legislature made LSCs the indispensable foundation of the school system, vesting in the LSCs the authority to control and supervise the operation of local schools –

> "[T]he General Assembly intends to make the individual local school the essential unit for educational governance and improvement and to establish a process for placing the primary responsibility for school governance and improvement in furtherance of such goals in the hands of parents, community residents, teachers and the school principal at the school level."

14. The Reform Act further provided that the local school was to be the focus of reform by turning over significant powers to the principal who was to work in association with and be supervised by the LSC.

15. The LSC evaluated and elected the principal, developed specific performance criteria for the principal, had responsibility for approving the budget plan and had substantial advisory responsibilities.

16. The Reform Act provided that the LSC would be composed of the principal and 10 elected members: six parents of currently enrolled students, two residents of the area and two teachers who were to be elected by the school staff.

17. In 1989, following an advisory election involving her peers and colleagues on the Disney staff, Plaintiff was appointed to a two year term as one of Disney's teacher representatives to its LSC. Thereafter, she was twice re-elected and reappointed to the LSC.

## The § 1983 Lawsuit and Settlement

18. Following her election to the LSC, Plaintiff attended LSC meetings, spoke on issues of public concern and on occasion opposed the direction advocated and actions taken by the principal.

19. In response to Plaintiff's exercise of her constitutional rights to free speech and her participation in this educational reform initiative as directed by the legislature, the principal at Disney harassed Plaintiff in the performance of her job as a school teacher. The harassment and intimidation took place over the years, caused by her opposition to the school's functioning, the principal's performance and certain actions taken by him.

20. General Superintendent of Schools Argie Johnson ("Superintendent Johnson") and the Board knew about the principal's mistreatment of Plaintiff and the other LSC teacher representative and failed to take any meaningful action to prevent the wrongdoing.

21. After enduring this mistreatment for several years and finding the harassment and intimidation unbearable, Plaintiff retired under duress in June 1994.

4

22. As a result of harassment and intimidation, Plaintiff and the other teacher representative who also served on the LSC filed the § 1983 Lawsuit against the Board, Superintendent Johnson, and Raphael Guajardo (then principal at Disney).

23. The § 1983 Lawsuit alleged that when Plaintiff and the other LSC teacher representative spoke out on matters of public concern, the principal subjected them to a campaign of harassment designed to chill their speech and create an atmosphere which caused other teachers at Disney to fear associating with the LSC teacher representatives.

24. Eventually, pursuant to the Settlement Agreement, the § 1983 Lawsuit was dismissed with prejudice.

25. The Settlement Agreement provided that certain terms relating to the settlement were confidential and were not to be released by the parties to anyone other than their immediate family members, attorneys and financial advisors.

**Plaintiff's Subsequent Employment**

26. In order to supplement the reduced pension annuity that she received from the Public School Teachers' Pension Retirement Fund of Chicago (the "Teachers' Pension Fund"), after her constructive discharge from her teaching position at Disney in June 1994, Plaintiff took a job as a teacher at the Arie Crown Day School, a private parochial school in Skokie, Illinois ("Arie Crown").

27. Prospective disciplinary action was contemplated against Disney's principal. In late 1995-early 1996 Plaintiff was aware that such action was contemplated and believed at that time that the principal would soon be removed.

28. After Plaintiff signed the Settlement Agreement, she discovered that the principal's removal would not imminently take place because the Law Department had

5

concluded that no disciplinary action could be taken more than two years after issuance of a Warning Resolution.

29. Plaintiff sent letters to various of the Board's schools, looking for a teaching position for the 1996-97 school year. She was not selected or offered employment.

30. Left without a job at a Board school, Plaintiff taught at Arie Crown during 1996-97.

31. As she was preparing to start the 1997-98 school year at Arie Crown, Plaintiff received a call from Marilyn Johnson, the General Counsel of the Board's Law Department, who informed Plaintiff that she approved Plaintiff's reinstatement and re-employment to a teaching position at Disney. The Law Department faxed a letter or memorandum to Disney the day before the school year started to notify Disney that Plaintiff was returning to her teaching position.

32. Plaintiff also was called by Dr. Lawrence Chase, the Disney principal, who informed her that she could immediately return to Disney.

33. Plaintiff went to work at Disney the day school started at the beginning of the 1997-98 school. She swiped her card through the Kronos time clock/payroll system; the card was accepted.

34. Plaintiff was assigned to Pod 210, 3rd Grade Team, where she was the sole teacher responsible for homeroom 216.

35. When Plaintiff arrived at Disney on the second day of her return to work in August 1997, she again swiped in, as she had the previous day. This time, her card was not accepted by the Kronos system.

6

36. Thinking that the failure of the electronic system to accept her card was nothing more than a technical glitch, Plaintiff informed Dr. Chase of the problem. Dr. Chase responded that he would look into the situation for her.

37. During the next two weeks, Plaintiff manually signed in and reported to her classroom for the day's instruction and activities with her 3rd grade class.

38. Plaintiff continued to come to work each day and to perform all the duties required or asked of her. Those were the same duties and responsibilities of all classroom teachers at Disney.

39. Plaintiff did not receive a paycheck on the normal payday for the first regular pay period of the 1997-98 school year. Plaintiff believed that the failure to receive a check was probably the result of her new status and that the problem would be soon corrected.

40. After Plaintiff did not receive a check when the second regular payroll was issued after her return, Plaintiff contacted Ms. Katie Simmons, the LSC chairperson, and arranged for a meeting with representatives of the Board's Law Department.

41. Plaintiff brought certain sign-in/sign-out sheets to document her attendance. The Law Department's representative was already aware that Plaintiff was back at Disney, and Plaintiff's status as the Board's employee was confirmed. Plaintiff was told that everything was fine and that the Law Department would get back in touch with her.

42. The problem was not resolved. Plaintiff was not paid. Plaintiff continued to inform Dr. Chase about the situation.

43. After this predicament persisted, Plaintiff, Ms. Simmons and a lawyer who had previously represented the LSC president went back to the Law Department.

7

44. During their meeting, the Law Department's representative again confirmed that they (Board representatives) were aware that Plaintiff was teaching at Disney. He stated that they would investigate and work out the problem. Not only was the pay issue to be corrected, but the Law Department's representative also initiated a comment and discussion that they would see if Plaintiff could receive pension credits for the three years that she taught at Arie Crown.

45. Between August 1997 through June 2004, Plaintiff performed all duties assigned to her by administrators at Disney, including classroom teaching. Those duties included:

    A.    preparing lessons plans and obtaining and preparing materials to implement the lesson plans;

    B.    teaching subject matter and lessons in the areas of reading, Social Studies, mathematics and science;

    C.    completing and issuing report cards;

    D.    attending staff meetings regarding administrative school matters;

    E.    preparing reports regarding enrollment, membership and attendance;

    F.    maintaining cumulative record cards, registration cards, cumulative folders and other student information and records;

    G.    complying with leave procedures required by the Board and Disney administrators;

    H.    attending staffing meetings regarding students with special needs and participating in special education meetings and preparing IEPs;

    I.    performing administrative duties of homeroom teachers;

    J.    planning instruction with other teachers;

    K.    keeping anecdotal records on students who may be referred for further evaluation;

  L. assisting and monitoring uniform and standardized testing;

  M. following authorized procedures for school classroom expenditures;

  N. conferring with parents regarding their children's progress and achievements;

  O. attending school open houses;

  P. participating in educational seminars and classes;

  Q. organizing and leading extracurricular school events;

  R. coordinating school field trips;

  S. participating in professional development and skills training;

  T. supervising student teachers;

  U. completing attendance and payroll records;

  V. serving on school committees;

  W. decorating and organizing the classroom;

  X. meeting with company representatives and selecting textbooks;

  Y. writing disciplinary letters to students; and

  Z. chairing meetings of the reading improvement project.

46. Students, parents, teachers, school staff and administrators had no doubt that Plaintiff was fully performing all of these activities in the capacity of teacher.

47. As a result of her teaching performance and dedication over the years, in May 2002 and April 2004, Plaintiff was recognized with Appreciation Day certificates awarded by the Board's Chief Education Officer and Chief Executive Officer.

48. Notwithstanding the foregoing, **Plaintiff received no compensation from the Board for the entire seven academic years (August 1997 through June 2004)** **no** wages, **no** employee benefits, **no** credit toward her pension, **no** health care coverage, etc.

9

49. The principals at Disney and Board representatives were at all times aware of this ongoing situation. Plaintiff and various personal and legal representatives from time to time contacted the Law Department to follow up and seek a fair resolution.

50. Representatives from the Board and the Law Department knew of this situation or should have reasonably known of this situation throughout. Nothing was done to correct or remedy these matters.

51. Prior to the start of the 2004-05 school year, Plaintiff informed the Disney principal that she would not come back.

52. Plaintiff's current pension from the Teachers' Retirement Fund has been improperly reduced and is incorrectly calculated.

    A. It is based on her retiring at age 53 in 1994, when she actually retired at age 63 in 2004.

    B. It is based on 28 years of service, when Plaintiff actually has 35 years of credited service and is entitled to full, unreduced pension benefits.

    C. It is based on a 1.8 multiplier, when Plaintiff is actually entitled to a 2.2 multiplier.

53. Plaintiff was required to draw her reduced pension in order to subsist. Plaintiff has sustained other financial losses as a result of the Board's failure to adhere to the terms of the Settlement Agreement. For example, she expended financial resources to purchase health insurance that largely would have been provided by the Board, and she had to advance funds to obtain additional years of service in order to participate in an early retirement incentive program that was not necessary in light of Plaintiff's later service with the Board.

## COUNT I

### (The Board's Breach of
### The Settlement Agreement)

54. Plaintiff hereby repeats and realleges paragraphs 1 to 53 and incorporates them herein by reference.

55. As stated above, Plaintiff entered into the Settlement Agreement with the Board.

56. The Settlement Agreement provided certain benefits to Plaintiff.

57. The Board has not provided the benefits promised under the Settlement Agreement to Plaintiff.

58. After Plaintiff returned to Disney, the Board did not pay those items identified in paragraphs 5 and 48, among other items and benefits.

59. Consequently, the Board has breached the Settlement Agreement with Plaintiff.

60. In addition to the Board's failure to provide the promised benefits, Plaintiff has been forced to purchase replacements, at her personal expense and often at greater cost than the cost which the Board would have paid.

61. Accordingly, Plaintiff has sustained substantial damages as a result of the Board's breach.

WHEREFORE, Plaintiff Gail Kay prays that this Court:

1. award actual damages in an amount to be determined at trial; and

2. award such other and further relief as the Court deems equitable, just, and proper under the circumstances.

## COUNT II

### (§ 1983 Retaliation)

62. Plaintiff hereby repeats and realleges paragraphs 1 to 61 and incorporates them herein by reference.

63. The Board has acted with reckless and deliberate indifference to Plaintiff's rights under the First Amendment to the Constitution.

64. Throughout the time that Plaintiff served as an LSC representative, she engaged in constitutionally protected free speech on matters of public concern. Certain of those matters of public concern are identified in further detail in the § 1983 Lawsuit.

65. The Board knowingly and intentionally failed to redress and correct its failure and refusal to pay Plaintiff or make payments on her behalf as retaliation for Plaintiff having brought the § 1983 Lawsuit in the first place in which she alleged that the Board violated Plaintiff's First Amendment Free Speech rights.

66. By reason of the facts alleged above, the Board acted under color of state law by retaliating against the Plaintiff in the aftermath of the settlement of the previous § 1983 Lawsuit to deprive her of her rights under the First Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Gail Kay prays that this Court:

1. award actual damages in an amount to be determined at trial;

2. award reasonable attorney's fees and costs; and

3. award such other and further relief as the Court deems equitable, just and proper.

## COUNT III

### (Quantum Meruit)

67. Plaintiff hereby repeats and realleges paragraphs 1 to 66 and incorporates them herein by reference.

68. By returning to the classroom and teaching between 1997-2004, Plaintiff performed valuable services which benefited the Board.

69. If Plaintiff had not performed the teaching services, the Board would have had to hire another teacher in her stead and pay for him/her to perform comparable services.

70. Plaintiff returned to work expecting to be paid her full salary and receive all benefits to which she would be entitled as any other teacher was entitled under the collective bargaining agreement between the Chicago Teachers Union and the Board.

71. The Board accepted the teaching services provided by Plaintiff and did nothing to discourage her from performing them over the course of the entire seven academic years.

72. The Board never told Plaintiff or any representative or agent who inquired on her behalf that she would not be paid or was not entitled to and would not be paid a teacher's compensation for her services.

73. The circumstances under which the Board encouraged Plaintiff to continue to work make it unfair and improper for the Board to contend after the fact that Plaintiff was not entitled to compensation for such services or reimbursement for amounts expended by her for benefits otherwise offered to other teachers in her position, including credit for the years taught for purposes of her pension annuity.

WHEREFORE, Plaintiff Gail Kay prays that this Court:

1. award actual damages in an amount to be determined at trial; and

2. award such other and further relief as the Court deems equitable, just and proper.

## COUNT IV

### (Restitution/Unjust Enrichment/Estoppel)

74. Plaintiff hereby repeats and realleges paragraphs 1-2, 6-30, 32-53, 63-65, 68-73, and incorporates them herein by reference.

75. As alleged throughout this Complaint, the Board, by its own misconduct, has unjustly retained money that should have been paid to Plaintiff or on her behalf. The Board's failure and refusal to make such payments operated to Plaintiff's detriment.

76. As a result of the misconduct described in this Complaint, it would violate fundamental principles of justice, equity and good conscience to permit the Board to retain the benefits of that misconduct.

77. The Board must pay to Plaintiff, and reimburse her, for all wages and other payments that should have been made to her or paid on her behalf during the period between January 1996 through the current date.

78. Given the foregoing facts as alleged throughout this Complaint regarding the Board's misconduct, the Board has been unjustly enriched by such misconduct because it has retained monies that should have been paid to Plaintiff. The Board should be barred and estopped from denying that Plaintiff was a teacher and had performed valuable services between August 1997 through June 2004, when she retired.

WHEREFORE, Plaintiff Gail Kay prays that this Court:

1. award actual damages in an amount to be determined at trial; and

2. award such other and further relief as the Court deems equitable, just and proper.

PLAINTIFF GAIL KAY

By: Steven J. Plotkin, Attorney for Plaintiff

Steven J. Plotkin
ARDC # 2219778
Law Offices of Steven J. Plotkin
2324 Park Place
Evanston, Illinois 60201
(847) 864-9158

15

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

PLAINTIFF GAIL KAY

By: Steven J. Plotkin, Attorney for Plaintiff

Steven J. Plotkin
ARDC # 2219778
Law Offices of Steven J. Plotkin
2324 Park Place
Evanston, Illinois 60201
(847) 864-9158