IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL KAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 06 C 368 |
| BOARD OF EDUCATION OF THE ) | |
| CITY OF CHICAGO, ) | HONORABLE CHARLES R. NORGLE |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is the Complaint in this cause of action. Defendant has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). However, in its motion, Defendant does not address the issue of arbitration as it relates to Plaintiff's claim. Based on the following, the court, *sua sponte*, dismisses the Complaint for improper venue.

**I. BACKGROUND**

**A. Facts**

There are many dedicated teachers, but few would work for seven years without receiving a paycheck. This case arises out of Gail Kay's employment with the Walt Disney Magnet School ("Disney") in Chicago, Illinois from 1994 through 2004. Plaintiff Gail Kay ("Kay") began work as an elementary school teacher in September 1966. In 1974, Disney hired Kay, where she worked until her termination in 1994. Kay alleges that she was forced into early retirement due to harassment by Disney's principal Raphael Guajardo ("Guajardo") as a result of Kay's opposition to certain actions taken by him.

1

In 1994, Kay filed a § 1983 claim against the Defendant Board of Education of the City of Chicago (the "Board") in the Northern District of Illinois, and eventually a settlement was reached.[1] Under the settlement agreement, the Board would reinstate Kay as a tenured teacher with full seniority, as well as give Kay her full retirement benefits until she accepted re-employment. Additionally, Kay agreed to not teach at Disney as long as Guajardo served as principal. In 1996, Kay began to work at the Arie Crown Day School in Skokie, Illinois. Then, in 1997, Kay was notified that Guajardo no longer worked at Disney, and that she could resume her teaching responsibilities there immediately.

Kay claims that she was not paid for her services upon her return to Disney. When she did not receive a check after several payroll periods, Kay met with the Board's Law Department. The Law Department informed Kay that "everything was fine and that the Law Department would get back in touch with her." However, according to Kay, the problem was not resolved, and she continued to remain unpaid.

Between August 1997 through June 2004, Kay contends that she performed all of her assigned duties for Disney, yet received no compensation for this entire seven year span. In addition to her lack of payment, Kay alleges that she received no employee benefits, no credit towards her pension, and no health care coverage. Kay further alleges that the Board and the Law Department were aware that she had not received compensation, yet did not nothing to remedy the situation. Then, prior to the start of the 2004-2005 school year, Kay informed the Disney principal that she would not return to the school.

**B. Procedural History**

On January 23, 2006, Kay filed her four-count Complaint, alleging a breach of a twelve-year old Settlement Agreement in 1994, a § 1983 claim for retaliation, quantum meruit, and a claim styled

---

[1] See Kay v. Guajardo, et al., Case No. 94-C-4922 (N.D. Ill. 1994).

2

"Restitution/Unjust Enrichment/Estoppel." Then, on March 13, 2006, the Board filed its Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Kay filed her Response on April 21, 2006, and the Board Replied on May 5, 2006. Then, on May 30, 2006, the court instructed the parties to brief the issue of arbitration as it applies to the CBA in this case. On June 23, 2006, Defendant filed its brief, and on July 6, Plaintiff filed her brief in regards to the arbitration issue. There are no other motions before the court.

## II. DISCUSSION

### A. Standard of Review

#### *1. Venue*

Under Federal Rule of Procedure 12(b)(3), a case may be dismissed for lack of proper venue. Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate. See Metro. Life Ins. Co. v. O'Malley, 392 F. Supp. 2d 1042 (N.D. Ill. 2005); see also Cont'l Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."); Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) ("We have held dismissal [where both parties to a contract have agreed to arbitrate disputes] to be appropriate, and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3).") (citations omitted).

#### *2. Arbitration Provision*

The court is mindful that arbitration forgoes the costly expenses of litigation for a more economical method to solve legal disputes. "Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the

assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). In addition, "parties are bound to an arbitration provision even if they did not read the provision." James v. McDonald's Corp., 417 F.3d 672, 678 (7th Cir. 2005). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983). With these principles in mind, we turn to Kay's Complaint.

**B. Kay's Complaint**

Fundamentally, the Plaintiff claims she worked for seven years without being paid. Here, because Kay was an elementary school teacher with the City of Chicago, she is subject to the collective bargaining agreement ("CBA") between the City and the Chicago Teachers Union. Specifically, the CBA states that "a grievance is a complaint involving a work situation . . . or a complaint that there has been a violation, misinterpretation, or misapplication of any provisions of this Agreement." CBA, Art. 3, Section 1. Furthermore, the CBA provides for an arbitration procedure:

> **3-5 Arbitration.** The parties agree to establish a permanent panel of arbitrators. This panel is attached as Appendix D. Arbitrators may be removed from the permanent panel by written notice from one party to the other requesting removal. Cases pending before a removed arbitrator shall be not affected. The parties shall make every effort to agree upon a substitute arbitrator. In no event may the arbitration panel be fewer than seven arbitrators.
> Within 15 school days after receiving the decision of the General Superintendent, pursuant to Articles 3-3 and 3-6 of this Agreement, the UNION may file a demand for arbitration with the BOARD. Within 15 school days thereafter, the parties will mutually agree to an arbitrator for the grievance, selecting from the permanent panel . . . Within five school days of selection of an arbitrator, the parties will contact the arbitrator directly and notify the arbitrator of his or her appointment, request available hearing dates, and mutually agree to a hearing date . . . Within 20 days after completion of the hearing, the arbitrator shall render a decision and opinion. The

decision shall be final and binding on the parties. The cost of the arbitrator shall be equally shared by the parties.

CBA Art. 3 Section 5.

It is undisputed that there is a written agreement to arbitrate, as demonstrated in the CBA, and that both Kay and the Board were signatories to this agreement. See Employees Ins. Co. of Wausau v. Century Indem. Co., 443 F.3d 573, 576 (7th Cir. 2006) ("unless the arbitration agreement is clear and unmistakable that the issue of arbitrability is for the arbitrator, it should be resolved by the court."). Both parties agreed to arbitration when they entered the CBA. See Wise v. Wachovia Securities, LLC, 450 F.3d 265, 269 (7th Cir. 2006). Furthermore, Kay seeks compensation for the seven years she worked at Disney. Such a claim certainly fails within "a violation, or misapplication of this Agreement." See CBA, Art. 3, Section 1. When the Board and Kay agreed to the arbitration process, they traded "the formalities of the judicial process for the expertise and expedition associated with arbitration." Lefkovitz, 395 F.3d at 780; see Int'l Brotherhood of Elec. Workers v. CSX Transp., Inc., 446 F.3d 714 (7th Cir. 2006) (discussion of arbitration of Railway Labor Act claims). The parties are not allowed to ignore this signed agreement in favor of litigation in federal court.

While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co., 354 F.3d at 608 (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select). As a result, the proper venue for this dispute is before the arbitrator, and not in the United States District Court for the Northern District of Illinois.

## III. CONCLUSION

For the reasons stated above, the court, *sua sponte*, dismisses the Complaint for improper venue. Defendant's Motion to Dismiss is denied as moot.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 7-12-06